·1001-15; 1002-15; 1003-15

PD-1001,1002,1003-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/8/2015 4:01:10 PM
Accepted 9/8/2015 4:06:31 PM
ABEL ACOSTA
CLERK

# IN THE

# COURT OF CRIMINAL APPEALS

----------------------------------------------------------------

## THE STATE OF TEXAS,
Appellant,

## VS.

## CHRISTOPHER FELLOWS, STEVE MARSTON, & PAUL CARTER,
Appellees.

----------------------------------------------------------------

## ON APPEAL FROM THE 377TH DISTRICT COURT
## OF VICTORIA COUNTY, TEXAS

## AND ON DISCRETIONARY REVIEW FROM THE
## THIRTEENTH JUDICIAL DISTRICT AT CORPUS CHRISTI

----------------------------------------------------------------

## APPELLEES'S PETITION FOR DISCRETIONARY REVIEW

----------------------------------------------------------------

**BRIAN W. WICE**

440 Louisiana Suite 900
Houston, Texas 77002-1635
(713) 524-9922 PHONE
(713) 236-7768 FAX
TBA NO. 231417800
wicelaw@att.net
LEAD COUNSEL FOR APPELLEES

**CHRIS TRITICO**

1212 Durham Drive
Houston, Texas 77007
(713) 581-3399 PHONE
(713) 581-3360 FAX
TBA NO. 20232050
Tritico Rainey, P.L.L.C.

## ORAL ARGUMENT REQUESTED

## IDENTIFICATION OF THE PARTIES

Pursuant to **TEX.R.APP.P.** 38.1(a), a list of the names and addresses of all interested parties is provided below so the members of this Honorable Court may determine whether they are disqualified to serve or should recuse themselves from participating in this matter:

**Complainant:**
The State of Texas

**Appellees:**
Christopher Fellows, Steve Marston & Paul Carter

| Trial counsel for Appellee: | Appellate Counsel: |
|---|---|
| Chris Tritico & Ron Rainey | Chris Tritico & Ron Rainey |
| 1212 Durham Drive | 1212 Durham Drive |
| Houston, Texas 77007 | Houston, Texas 77007 |

**Counsel on Discretionary Review:**

| Brian Wice | Chris Tritico |
|---|---|
| 440 Louisiana Suite 900 | 1212 Durham Drive |
| Houston, Texas 77002-1635 | Houston, Texas 77007 |

**Counsel for the State:**
Abbey Fowler & Harry White [Trial]
Joseph Corcoran [Appeal]
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548

**Trial Judge:**
Honorable Robert Cheshire
377th District Court
Victoria County, Texas

i

# TABLE OF CONTENTS

PAGE

IDENTIFICATION OF THE PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE PROCEDURAL HISTORY . . . . . . . . . . . . . . . 2

GROUNDS FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

1. The court of appeals erred in holding that the State did not violate Appellees's due process rights pursuant to the Fifth and Fourteenth Amendments to the United States Constitution on the grounds that the evidence on POS1 was not exculpatory.

2. The court of appeals erred in holding that the State did not violate Appellees's due course of law rights pursuant to Art. I, §9 of the Texas Constitution on the grounds that the evidence on POS1 was not exculpatory.

3. The court of appeals erred in holding that the State did not violate Appellees's due process rights pursuant to the Fifth and Fourteenth Amendments to the United States Constitution on the grounds that the evidence on POS1 was not material.

4. The court of appeals erred in holding that the State did not violate Appellees's due course of law rights pursuant to Art. I, §9 of the Texas Constitution on the grounds that the evidence on POS1 was not material.

ARGUMENT AND REASONS FOR REVIEW . . . . . . . . . . . . . . . . . . . . . 3

    A. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

1. *The State's Destruction of POS1 and Appellees's Motion to Dismiss* 3

2. *The Exculpatory Nature of POS1: the Farley and Pena Affidavits* . 4

3. *Appellees's Arguments and the Trial Court's Findings* . . . . . . . . . . 6

    B. THE COURT OF APPEALS'S PUBLISHED OPINION . . . . . . . . . . . . . . . 9

    C. REASONS FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

1. *Important Questions of Law Not Yet Decided by this Court* . . . . . 11

2. *The Court of Appeals Failed to Afford "Almost Total Deference" to the Trial Court's Fact Findings* . . . . . . . . . . . . 12

3. *The Court of Appeals Ignored Trial Court Fact-Finding No. 19: State's Exhibit 1 Did Not Mitigate the Destruction of POS1* . . . . . 14

4. *The Court of Appeals's Decision is in Conflict with* <u>*Brice v. State*</u> 16

5. *The Court of Appeals's' Reliance on* <u>*Jester v. State*</u> *is Misplaced* . 17

CONCLUSION AND PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . 21

APPENDICES:

  A. COURT OF APPEALS'S PUBLISHED OPINION

  B. TRIAL COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

# INDEX OF AUTHORITIES

PAGE

CASES:

Arizona v. Youngblood, 488 U.S. 51 (1988) . . . . . . . . . . . . . . . . . . . 7

Brady v. Maryland, 373 U.S. 83 (1963) . . . . . . . . . . . . . . . . . . . . 6

Brice v. State, 242 S.W.2d 433 (Tex.Crim.App. 1951) . . . . . . . . . . 16,17

California v. Trombetta, 467 U.S. 479 (1984) . . . . . . . . . . . . 7,14,15,16

Charles v. State, 146 S.W.3d 204 (Tex.Crim.App. 2004) . . . . . . . . . . 13

DeLay v. State, 443 S.W.3d 909 (Tex.Crim.App. 2014) . . . . . . . . . 12,16

DeLay v. State, 410 S.W.3d 902 (Tex.App. – Austin 2013, pet. grt'd) . 16

Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238 (Tex. 1985) 112

Holmes v. South Carolina, 547 U.S. 319 (2006) . . . . . . . . . . . . . . . . 11

Illinois v. Fisher, 540 U.S. 544 (2004)(per curiam) . . . . . . . . . . . . . . 7

Jester v. State, 64 S.W.3d 553
(Tex.App.– Texarkana 2001, no pet.) . . . . . . . . . . . . . . . . . . . . 17,18

J.W. Huber Corp. V. Sante Fe Energy, 871 S.W.2d 842
(Tex.App.– Houston [14th Dist.] 1994, writ dism'd) . . . . . . . . . . . . 18

Pena v. State, 353 S.W.3d 797 (Tex.Crim.App. 2011) . . . . . . . . . . . . 20

Sims v. State, 99 S.W.3d 600 (Tex.Crim.App. 2003) . . . . . . . . . . . . 15

State v. Fellows, ___ S.W.3d ___, 2015 WL 4504936
(Tex.App.– Corpus Christi July 20, 2015)(op. on rehr'g) . . . . . passim

State v. Krizan-Wilson, 354 U.S. 808 (Tex.Crim.App. 2011) . . . . . 12,13

State v. Mechler, 153 S.W.3d 435 (Tex.Crim.App. 2005) . . . . . . . . . . . 12

Texas v. Ysleta del sur Pueblo, 2015 WL 1003879 (W.D.Tex. 2015) . . 18

Thomason v. State, 892 S.W.2d 8 (Tex.Crim.App. 1994) . . . . . . . . . . 17

United States v. Davis, 690 F.3d (5th Cir. 2012) . . . . . . . . . . . . . . . . . 18

Vaughn v. State, 931 S.W.2d 564 (Tex.Crim.App. 1996) . . . . . . . . . . 18

Wallen v. State, 677 S.W.2d 789 (Tex.App.– Austin 1984, no pet.) . . . 14

## TEXAS RULES OF APPELLATE PROCEDURE:

Rule 66.3(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,14,18,19

Rule 66.3(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,12,19

Rule 66.3(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,14,16,17,19

Rule 66.3(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,14,15,16

Rule 70.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## UNITED STATES CONSTITUTION:

AMEND. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

AMEND. VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

AMEND. XIV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,11

## TEXAS CONSTITUTION:

ART. I, §9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*PD-1001-15; 1002-15; 1003-15*

IN THE

COURT OF CRIMINAL APPEALS OF TEXAS

----------------------------------------------------------------

THE STATE OF TEXAS,
Appellant,

VS.

CHRISTOPHER FELLOWS, STEVE MARSTON, & PAUL CARTER
Appellees.

----------------------------------------------------------------

*TO THE JUDGES OF THE COURT OF CRIMINAL APPEALS:*

Christopher Fellows, Steve Marston, and Paul Carter, Appellees, by

their Counsel of Record, BRIAN W. WICE and CHRIS TRITICO, pursuant to

TEX.R.APP.P. 70.1, submit their Petition for Discretionary Review.

## I. STATEMENT REGARDING ORAL ARGUMENT

Oral argument is warranted because this case presents significant

issues regarding a defendant's due process and due course of law rights to

a dismissal of charges where the State destroys evidence in its possession

that is material and exculpatory, regardless of its good faith or bad faith.

1

## II.  STATEMENT OF THE CASE

Appellees were indicted for the offenses of criminal conspiracy and money laundering relating to the operation of an alleged illegal gambling establishment.  The trial court granted Appellees's motion to dismiss the indictments, finding that a due process violation occurred when material and exculpatory evidence had been destroyed by the State.  On appeal, the court of appeals concluded that the evidence was neither material nor exculpatory, reversed the trial court's order, and remanded the cases to the trial court.  <u>State v. Fellows</u>, 2015 WL 3799457 at *10 (Tex.App.– Corpus Christi June 18, 2015)(not designated for publication).  On July 23, 2015, the court of appeals denied Appellees's motion for rehearing, but granted their motion to publish.[1]  <u>State v. Fellows</u>, ___ S.W.3d ___, 2015 WL 4504936 (Tex.App.– Corpus Christi July 23, 2015).

## III.  STATEMENT OF THE PROCEDURAL HISTORY

The court of appeals issued its opinion on rehearing and granted Appellees's motion to publish on July 23, 2015.  Pursuant to an extension of time, this petition is due on September 21, 2015.

---

[1] All references to the court of appeals' published West Law opinion are denominated as "*___."

# IV. GROUNDS FOR REVIEW

1. The court of appeals erred in holding that the State did not violate Appellees's due process rights pursuant to the Fifth and Fourteenth Amendments to the United States Constitution on the grounds that the evidence on POS1 was not exculpatory.

2. The court of appeals erred in holding that the State did not violate Appellees's due course of law rights pursuant to Art. I, §9 of the Texas Constitution on the grounds that the evidence on POS1 was not exculpatory.

3. The court of appeals erred in holding that the State did not violate Appellees's due process rights pursuant to the Fifth and Fourteenth Amendments to the United States Constitution on the grounds that the evidence on POS1 was not material.

4. The court of appeals erred in holding that the State did not violate Appellees's due course of law rights pursuant to Art. I, §9 of the Texas Constitution on the grounds that the evidence on POS1 was not material.

# V. ARGUMENT AND REASONS FOR REVIEW

## A. STATEMENT OF FACTS

### 1. The State's Destruction of POS1 and Appellees's Motion to Dismiss

On February 18, 2009, officers from the Victoria Police Department and United States Secret Service raided the Victoria Internet Café (the Café) pursuant to a warrant issued after a nine-month undercover investigation. According to testimony by officers involved in the investigation, the Café offered its customers access to illegal eight-liner gambling devices. During the raid, law enforcement seized every

3

computer in the Café, including the customer terminals and the point-of-sale terminal, referred to by the parties as "POS1," that was used by Café employees to transact with patrons. It is undisputed that the hard drive in POS1 was damaged beyond repair while in the State's custody. The State concedes that no usable information can be retrieved from that hard drive.

In January 2011, in connection with their involvement with the Café, appellees were charged in identical indictments for the offenses of organized criminal activity and money laundering. ...

In December of 2013, appellees filed a motion to dismiss their indictments on the grounds that the State's failure to preserve the data from POS1 deprived them of material, exculpatory evidence. Appellees argued that this was a violation of both their due process rights under the United States Constitution and their due course of law rights under the Texas Constitution.

State v. Fellows, ___ S.W.3d at ___; at *1-2 (footnotes omitted).

## 2. The Exculpatory Nature of POS1: the Farley and Pena Affidavits

At the hearing held on their motion to dismiss, Appellees offered the affidavits of Nick Farley, an electrical engineer who specialized "in the testing and evaluation of gaming and electronic devices," including his report about the working of the Hest Sweepstakes System,[2] and Vanessa

---

[2] The Hest Sweepstakes System was the program allegedly housed on POS1 that the Café ran on its terminals. **State v. Fellows**, ___ S.W.3d at ___; at *2.

4

Pena, a Café employee.[3]

Farley swore in his affidavit that the Hest sweepstakes program's database stored all current and historical information related to every customer, transaction, and "sweepstakes reveal." He averred that:

- information that was maintained in the database would have been exculpatory in defending against [the State's] allegations;

- it was commonly understood in the gaming industry that "one of the reasons for maintaining a database of this nature is to guard against allegations such as the ones in this case as well as providing a mechanism by which regulatory or law enforcement agencies can monitor the establishment"; and

- the Hest sweepstakes program was not a "traditional gaming device" in that its "outcome is based upon a finite pool of sweepstakes entries" and "pre-determined prizes."

Id. at *2.

In her affidavit, Pena attested that:

- she regularly provided patrons free entries into the sweepstakes ("free entries");

- she regularly assisted patrons who redeemed sweepstakes without playing the entertainment games ("quick reveal"); and

---

[3] Appellees also offered: (1) orders from Cameron County and Hill County cases in which the courts dismissed charges based on devices like those seized from the Café and concluded that they were not illegal gambling devices; (2) manuals for the Hest Sweepstakes System; and (3) a letter from general counsel of the Texas Alcoholic and Beverage Commission expressing his opinion, in a different case, that the Hest Sweepstakes System was not an illegal gambling program. Id.

5

- she regularly assisted patrons who purchased phone cards but did not redeem their sweepstakes entries ("no-reveal").[4]

Id. at *6.

### 3. Appellees's Arguments and the Trial Court's Findings

Appellees argued that the various exhibits and the Pena and Farley affidavits buttressed their claim that the lost evidence from POS1 would have shown that the sweepstakes program complied with Texas law and was not an illegal gambling device.[5] As the court of appeals recounted:

> In sum, appellees argued that [POS1] would have shown that: the program was not an illegal game of chance because the prizes for the game were set and patrons merely "revealed" the prizes after playing the game; there was no consideration involved because patrons could play the game for free; and there was no illegal prize because Texas law allows for cash prizes in sweepstakes.[6]

---

[4] Farley swore in his affidavit that these facts would have been documented on POS1, and added that "the information on POS1 would be exculpatory if the State's contention[s] [were] that there were no [free entries available] ... or that the customers did not know that the sweepstakes prizes were not determined by the game terminals. Id. at *7 n. 6.

[5] "Sweepstakes are frequently used by fast-food restaurants to boost business. One of the most popular has been the McDonald's Monopoly 'instant-win' game-piece promotion. Soft drink companies also sponsor many sweepstakes, such as the Pepsi Billion Dollar Sweepstakes game and the Pepsi Stuff loyalty rewards program ... [that] was Pepsi's largest and most successful long-term promotion ever..." www.wikipedia.org/wiki/Sweepstakes (last visited August 21, 2015). **See also** Appellee's Brief at 36 ("If [the State's] view of the case had any validity to it, then the Monopoly promotion operated would be illegal [and] every time a person purchased a Big Mac and participated in the game offering several cash prizes up to a million dollars, a crime would be committed.").

[6] The State argued that the lost evidence from POS1 was not material, exculpatory evidence under **Brady v. Maryland**, 373 U.S. 83, 87 (1963), but, instead, potentially useful evidence under

<u>Id</u>. at *2.

Rejecting the State's proposed findings of fact, the trial court made, *inter alia*, the following findings of fact, in granting Appellees's motion to dismiss:

> 10. The Hest Sweepstakes System database ... and/or internal programs using data contained within the database, would allow [Appellees] to review the entire history of each and every transaction related to each and every customer's individual account ...

> 11. One of the reasons for maintaining a database of this nature is to guard against allegations of the nature charged in the present indictment.

> 15. Nick Farley testified ... that this information would be stored within the database and ... in a case of this nature, was both material and exculpatory.[7]

> 16. The Victoria Internet Café Hest System database contained evidence that was both material and exculpatory to the [Appellees] in the matter.

---

<u>Arizona v. Youngblood</u>, 488 U.S. 51, 57-58 (1988)(where loss of evidence is not the result of bad faith on the part of police, accused must show evidence was exculpatory and not merely "potentially useful" to prevail on a due process claim). **See also** <u>Illinois v. Fisher</u>, 540 U.S.544, 548 (2004)(per curiam)(law enforcement's obligation to preserve evidence confined "to that class of cases where the interests of justice most clearly require it."); <u>California v. Trombetta</u>, 467 U.S. 479, 489-90 (1984)(Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.").

[7] The trial court also credited Vanessa Pena's above-recounted testimony. <u>Id</u>. at *4.

17. The Court finds that the State failed to preserve material and exculpatory evidence.

19. The State's production of Exhibit 1 which contains daily logs and sign-in-sheets does not mitigate the destruction of the database.[8] For example:

    a. The State failed to preserve and/or recover the data that would have proven that the games played did not dictate the result or the sweepstakes prizes did not change;

    b. The State failed to preserve and/or recover the data that would have shown the numerous times free entries were provided;

    c. The State failed to preserve and/or recover the data that would have shown the numerous times that customers redeemed entries at the POS;

    d. The State failed to preserve and/or recover the data that would have shown the numerous times customers purchased phone cards without playing the computer terminals;

    e. The State failed to preserve and/or recover the data that would have shown the numerous times customers purchased phone time and never redeemed their entries;

    f. The State failed to preserve and/or recover the data that would have shown that customers redeemed sweepstakes at the computer terminals without playing the games;

    g. The State failed to preserve and/or recover the data

---

[8] As set forth in greater detail below, the court of appeals's inexplicably failed to incorporate this critical fact finding in its published opinion, merely including "...." in its stead. **Id**. at *4.

that would have provided the defendants the ability to trace the results of free spins and any other further reveals as a result of free spins; and

   h. The State failed to preserve and/or recover the data that would have shown the dollar amount of sales of products other than prepaid phone time.

Id. at *4; CR 334-35.

## B. THE COURT OF APPEALS'S PUBLISHED OPINION

The court of appeals framed the issue as whether the information Pena claimed was on POS1 — evidence of some free entries, some quick reveals, and some no-reveals — was exculpatory and material:

> [T]he dispute concerning the exculpatory value and materiality of the information on POS1 centers on a disagreement about the meaning of the consideration element as it relates to the legality of promotional sweepstakes under these Texas gambling statutes. In order to resolve this dispute, we must evaluate the extent to which the information on POS1 would have negated the element of consideration.

Id. at *7-8.

The court of appeals relied on a Texarkana Court of Appeals case, a decision from the Fifth Circuit, and a federal district court in holding that "the most that can be said about POS1 — as per Pena's affidavit" is that it was "merely potentially useful" and not "exculpatory and material." Id. at 7-10. The court then held that because Appellees failed to show the

9

115,000 pages of discovery the State turned over "lack sufficient detail or are incomparable to the information on POS1," it was "not persuaded that appellees lack reasonable access to comparable evidence." Id. at *10-11.

For the reasons that follow, the court of appeals's published opinion: (1) fails to afford the trial court's fact findings the "almost total deference" to which they are entitled; (2) ignores a critical trial court fact finding that Appellees lacked reasonable access to evidence comparable to POS1; (3) conflicts with decisions from this Court and the courts of appeals; and (4) decides an important question of state and federal law that has not been, but should be decided by this Court. Discretionary review, accordingly, is warranted pursuant to Tex. R. App. P. 66.3(a),[9] 66.3(b),[10] 66.3(c),[11] and 66.3(f).[12]

---

[9] "[W]hether a court of appeals' decision conflicts with another court of appeals' decision on the same issue."

[10] "[W]hether a court of appeals has decided an important question of state or federal law that has not been, but should be, settled by the Court of Criminal Appeals."

[11] "[W]hether a court of appeals has decided an important question of state or federal law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals..."

[12] "[W]hether a court of appeals has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of the Court of Criminal Appeals' power of supervision."

## C. Reasons for Review

### 1. *Important Questions of Law Not Yet Decided by this Court*

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment ... or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, ... the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" Holmes v. South Carolina, 547 U.S. 319, 324 (2006). This fundamental constitutional right would mean little if material and exculpatory evidence in the hands of law enforcement was lost or destroyed, regardless of the good or bad faith on law enforcement's part.

That's exactly what this case is about. But the court of appeals changed the conversation from the dismissal of these indictments based on a violation of this fundamental principle to an esoteric discussion of the element of consideration in gambling cases, ignoring fact findings based upon credibility that should have been, but were not, afforded almost total deference by the court of appeals. This case presents important questions of law this Court has yet to, but should decide, including whether the Due Course of Law Clause provides greater protection than the Due Process Clause regarding the State's destruction or loss of evidence in a criminal

11

case,[13] that warrants discretionary review pursuant to Rule 66.3(b).[14]

### 2. The Court of Appeals Failed to Afford "Almost Total Deference" to the Trial Court's Fact Findings

Appellate review of a trial court ruling dismissing an indictment is subject to review only for an abuse of discretion. **State v. Krizan-Wilson**, 354 S.W.3d 808, 815 (Tex.Crim.App. 2011)("appellee is correct that the court of appeals applied the incorrect standard of review and should have reviewed the trial court's ruling under an abuse of discretion standard..."). A trial court's decision is not an abuse of discretion so long as it is not arbitrary or unreasonable or outside the zone of reasonable disagreement. **State v. Mechler**, 153 S.W.3d 435, 439 (Tex.Crim.App. 2005). A trial court does not abuse its discretion merely because the court of appeals would have decided an issue differently. See **Downer v. Aquamarine Operators, Inc.**, 701 S.W.2d 238, 241 (Tex. 1985)("The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not

---

[13] Relying on cases from seven different courts of appeal, the court held that the Due Course of Law Clause provides no greater protection than the Due Process Clause regarding the State's loss or destruction of evidence in a criminal case. **State v. Fellows**, ___ S.W.3d at ___; at *2 n. 5.

[14] This matter arises in what would usually be a misdemeanor gambling case, recast by the State as criminal conspiracy and money laundering indictments, prosecutorial theories this Court has only recently rebuked. See **DeLay v. State**, 443 S.W.3d 909, 930 (Tex.Crim.App. 2014).

12

demonstrate that an abuse of discretion has occurred.").

In reviewing the dismissal of an indictment, the court of appeals is obligated to "give almost total deference to a trial court's findings of fact that are supported by the record, as well as mixed questions of law and fact that rely upon the credibility of a witness." **State v. Krizan-Wilson,** 354 S.W.3d at 815. That Farley and Pena testified via affidavit does not mean that the trial court's fact findings crediting their testimony are entitled to any less deference. See **Charles v. State,** 146 S.W.3d 204, 210 (Tex.Crim.App. 2004)("A deferential rather than de novo standard applies to our review of a trial court's determination of historical facts when that determination is based, as here, solely upon affidavits.").

Viewed through this prism, the court of appeals's refusal to afford "almost total deference" to the mixed question of law and fact that turned on the trial court's findings crediting Farley and Pena's testimony as to the material and exculpatory nature of POS1,[15] and their testimony that Appellees lacked reasonable access to comparable evidence[16] is in conflict with this Court's decisions, and warrants discretionary review pursuant

---

[15] See FF 14 (Pena); FF 15 (Farley); FF 16 (Pena & Farley).

[16] See FF 19 (Pena & Farley).

13

to Rule 66.3(c). Moreover, by not adopting the State proposed findings of fact as to the "exculpatory" and "comparable access" prongs, the trial court implicitly rejected the State's proposed findings. **See Wallen v. State**, 677 S.W.2d 789, 790 (Tex.App.– Austin 1984, no pet.)("the trial court's refusal to make the requested findings must be treated as implied findings" against losing party). The court of appeals's refusal to honor this critical principle warrants discretionary review pursuant to Rule 66.3(a).

### 3. The Court of Appeals Ignored Trial Court Fact-Finding No. 19: State's Exhibit 1 Did Not Mitigate the Destruction of POS1

In holding that Appellees failed to show that the information on POS1 met **Trombetta**'s materiality prong, the court of appeals stated that "the trial court made no determination that comparable information to that found on POS1 was unavailable to appellees." **State v. Fellows**, ___ S.W.3d at ___; at *10 n. 9. This assertion is not merely erroneous, but disingenuous, and warrants discretionary review pursuant to Rule 66.3(f).

In fact, as recounted above, in its 19th finding of fact, the trial court found, "[T]he State's production of Exhibit 1[17] which contains daily logs and sign-in-sheets does not mitigate the destruction of [POS1]." (CR 334).

---

[17] This reference is to the 115,000 pages of discovery tendered by the State. **Id**. at *10.

14

While the court of appeals sets out the trial court's detailed findings, it inexplicably ignores Finding of Fact 19, merely including "...." in its stead. Id. at *4. If the court of appeals's gambit does not warrant the granting of discretionary review pursuant to Rule 66.3(f), it is difficult to imagine what would. See Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003) ("We do not require that the court of appeals discuss *all* the evidence but [it] must include a discussion of the most important and relevant evidence that supports the appellant's claim on appeal."). Moreover, the court of appeals chided Appellees for "fail[ing] to explain how the documents lack sufficient detail or are incomparable to the information on POS1," State v. Fellows, ___ S.W.3d at ___; at *10, an avowal it could not have made, but for its Rule 66.3(f) material omission of this critical fact finding.

Finally, the court of appeals' failure to acknowledge the trial court's critical fact finding irreparably taints its conclusion that the information on POS1 was not material under Trombetta because it was not "of such a nature that [Appellees] would be unable to obtain comparable evidence by other reasonably available means."[18] Id. This fact finding fortifies the

---

[18] The court of appeals sought to buttress its jury-rigged conclusion in this regard by noting that, "Farley remains available to testify – consistent with his affidavit – that the chance of winning was the same, whether by way of free entry or by purchase of a product." Id. at *10. But earlier in

15

tenet that State's Exhibit 1 does not provide Appellees with the ability to completely trace a free entry, a key factor essential to Appellees's ability to separate clean money from dirty money, which is imperative in a money laundering case. See <u>DeLay v. State</u>, 410 S.W.3d 902, 914 (Tex.App. – Austin 2013, pet. grt'd), aff'd, 443 S.W.3d 909 (Tex.Crim.App. 2014). Discretionary review is warranted pursuant to Rule 66.3(f) and 66.3(c).

*4. The Court of Appeals's Decision is in Conflict with **Brice v. State***

In <u>Brice v. State</u>, 242 S.W.2d 433 (Tex.Crim.App. 1951), a promotion offered prizes to anyone who walked into the store and registered, but was not required to make a purchase or be present to win. <u>Id</u>. at 433. Because a person who made a purchase did not have any greater chance of winning a prize than a patron who did not, this Court held that this promotion was not an illegal lottery even though the merchant received the benefit of increased store traffic. <u>Id</u>. at 435.

As in **Brice**, there is no evidence in this case that patrons had to buy anything to enter the sweepstakes; all that was required was to enter the

---

its published opinion, the court of appeals described Farley's affidavit as "speculative, at best," <u>id</u> at *6, a tacit admission by the court of appeals that the evidence contained in POS1 is not available by other reasonably available means. This Janus-like reasoning and analysis further undermines the legitimacy of its published decision by misconstruing the materiality component of **Trombetta** in a manner that warrants discretionary review pursuant to Rule 66.3(c).

16

Café and either request a free entry in person or by mail. Pena's affidavit, which the trial court credited, to which the court of appeals failed to give "almost total deference," rebuts the notion that the telephone cards were a sham consideration or subterfuge. Moreover, as in **Brice**, the patrons who received entries without paying had the same odds of winning as the customers who purchased a product. Because the sweepstakes in the case at bar was identical to the prize giveaway in **Brice**, the court of appeals's holding that the evidence on POS1 was merely potentially useful and not exculpatory, conflicts with this Court's holding in **Brice** and warrants the granting of discretionary review pursuant to Rule 66.3(c).[19]

### 5. The Court of Appeals's' Reliance on *Jester v. State* is Misplaced

In concluding that the information stored on POS1, including but not limited to the sworn assertions in the Pena and Farley affidavits credited by the trial court, but which the court of appeals failed to give "almost total deference," was merely potentially useful and not exculpatory, the court of appeals relied primarily on **Jester v. State**, 64 S.W.3d 553, 554

---

[19] Tellingly, while Appellees cited **Brice** in their briefs and on rehearing, the court of appeals failed to discuss or distinguish it. See **Thomason v. State**, 892 S.W.2d 8, 10 n. 4 (Tex.Crim.App. 1994)("It is axiomatic that an appellate court must rely upon and apply the correct legal authority to resolve a point of error. Appellant cited and relied upon **Turner**. However, the Court of Appeals failed to cite, discuss or distinguish **Turner** in its resolution of this appeal.")

(Tex.App.– Texarkana 2001, no pet.). This misplaced reliance warrants the granting of discretionary review pursuant to Rule 66.3(a).[20]

In <u>Jester</u>, which the court of appeals "drew on for guidance," <u>State v. Fellows</u>, ___ S.W.3d at ___; at *8, the sweepstakes offered participants free entries – the chance to receive plays without any purchase, and they could also receive entries by using a phone card. But the court of appeals held that the phone cards were a sham consideration, and so constituted an improper attempt to legitimize an illegal gambling device because:

> telephone cards cost "much" more per minute than the market cost of telephone time; there was testimony that the telephone cards did not work; there was evidence that some players did not value the telephone cards, and that some players did not know they even were telephone cards; there was testimony that the employees were aware that the customers did not value the telephone cards; there were no signs on the outside of the building advertising or indicating that telephone cards were sold at the store; and no employee tried to sell customers on the telephone cards.

<u>Id</u>. at *8. But unlike <u>Jester</u>, there is no evidence here suggesting that:

---

[20] The court of appeals also relied on **United States v. Davis**, 690 F.3d 330 (5ᵗʰ Cir. 2012) and **Texas v. Ysleta del sur Pueblo**, 2015 WL 1003879 (W.D.Tex. March 6, 2015), to conclude that the phone cards were a mere subterfuge to promote play in the sweepstakes. **State v. Fellows**, ___ S.W3d at ___; at *8-10. The court of appeals's' reliance on these cases is easily defused as it is well settled that the holdings of the lower federal courts are not binding on this Court. **Vaughn v. State**, 931 S.W.2d 564, 568 n. 5 (Tex.Crim.App. 1996); **see also J.W. Huber Corp. v. Sante Fe Energy**, 871 S.W.2d 842, 846 (Tex.App. – Houston [14ᵗʰ Dist.] 1994, writ dism'd)(Texas courts "owe obedience to only one court ... namely, the Supreme Court.").

- the market cost of a telephone card was less than that charged by Appellees;[21]

- the phone cards did not work or that the players did not realize that the cards were phone cards;[22] or

- employees were aware the customers did not value the telephone cards.[23]

By relying on **Jester**, the court of appeals has heightened the burden placed upon the accused to show evidence the State has lost or destroyed is material and exculpatory, warranting review under Rules 66.3(a) and 66.3(b). And, because this Court has defined "exculpatory" evidence as "that which may justify, excuse, or clear the defendant from alleged guilt," **Pena v. State**, 353 S.W.3d 797, 811-12 (Tex.Crim.App. 2011), the court of appeals's failure to afford almost total deference to the trial court's fact findings based upon credibility that the evidence in POS1 was exculpatory warrants the granting of discretionary review pursuant to Rule 66.3(c).

---

[21] In fact, the record reveals that the rate-per-minute of Appellees's phone cards was cheaper than even the rates charged by AT&T on its prepaid cards.

[22] In fact, the record reflects that in one week's time, 9,831 calls were made using the cards, and during those calls, 56,723 minutes were used.

[23] In fact, Pena testified that the employees had personal knowledge that customers valued the phone cards, sought them for personal or family use, and that several customers came in solely to recharge their existing phone card without regard for playing the sweepstakes. **Grand Jury Testimony of Vanessa Pena**, pp. 33-35 (Exhibit A to Appellees's Opening Brief).

19

# VI. CONCLUSION AND PRAYER

Appellees pray that this Court grant discretionary review, reverse the judgment of the Thirteenth Court of Appeals, and remand the causes to the trial court with directions to affirm the trial court's order dismissing the indictments.

RESPECTFULLY SUBMITTED,

/s/ Brian W. Wice

_____

BRIAN W. WICE

440 Louisiana   Suite 900
Houston, Texas 77002-1635
(713) 524-9922 PHONE
(713) 236-7768 FAX
TBA NO. 21417800
wicelaw@att.net

/s/ Chris Tritico

_____

CHRIS TRITICO

1212 Durham
Houston, Texas 77007
(713) 581-3399 PHONE
(713) 581-3360 FAX
Bar No. 20232050

ATTORNEYS FOR APPELLEES
CHRISTOPHER FELLOWS
STEVE MARSTON
PAUL CARTER

20

## CERTIFICATE OF SERVICE

This petition was served on Joseph Corcoran, Office of the Attorney General, P.O. Box 12548, Austin, Texas, 78711, and State Prosecuting Attorney Lisa McMinn, P.O. Box 130046, Austin, Texas, 78711, by e-filing on September 3, 2015.

/s/ Brian W. Wice

_____

BRIAN W. WICE

## CERTIFICATE OF COMPLIANCE

Pursuant to TEX.R.APP.P. 9.4(1)(i)(1), I certify that this document complies with the type-volume limitations of TEX.R.APP.P. 9.4(i)(2)(D):

1. Exclusive of the exempted portions set out in TEX.R.APP.P. 9.4(i)(1), this document contains 4266 words.

2. This document was prepared in proportionally spaced typeface using Word Perfect 8.0 in Century 14 for text and Century 12 for footnotes.

/s/ Brian W. Wice

_____

BRIAN W. WICE

## APPENDIX A

CORPUS CHRISTI COURT OF APPEALS'S OPINION ON REHEARING

___ S.W.3D ___, 2015 WL 4504936

DELIVERED JULY 23, 2015

MOTION TO PUBLISH GRANTED JULY 23, 2015

2015 WL 4504936
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN
RELEASED FOR PUBLICATION IN THE
PERMANENT LAW REPORTS. UNTIL RELEASED,
IT IS SUBJECT TO REVISION OR WITHDRAWAL.

Court of Appeals of Texas,
Corpus Christi-Edinburg.

The State of Texas, Appellant,

v.

Christopher Shawn Fellows, Appellee.
The State of Texas, Appellant,

v.

Steve Marston, Appellee.
The State of Texas, Appellant,

v.

Paul Carter, Appellee.

NUMBER 13-14-00283-CR, NUMBER 13-
14-00284-CR, NUMBER 13-14-00285-
CR | Delivered and filed July 23, 2015

On appeal from the 377th District Court of Victoria
County, Texas.

**Attorneys and Law Firms**

Ron S. Rainey, Christopher L. Tritico, for Christopher Shawn
Fellows.

Neftali J. Villafranca, for Steve Marston.

Brent Dornburg, for Paul Carter.

Joseph P. Corcoran, Harry Eugene White, Abigail A. Fowler,
for the State of Texas.

Before Chief Justice Valdez and Justices Rodriguez and
Garza

**OPINION**

Opinion by Justice Rodriguez

**\*1** This Court issued a memorandum opinion on
June 18, 2015, reversing and remanding the cases for
further proceedings. Thereafter, appellees Christopher Shawn
Fellows, Steve Marston, and Paul Carter filed motions to
publish. We grant the appellees' motions to publish. We
withdraw our memorandum opinion and judgments of June
18, 2015, and we substitute the following opinion and
judgments in their place.

This case arises from a criminal conspiracy and money-
laundering prosecution related to the operation of an alleged
illegal gambling establishment in Victoria County, Texas.
By one issue, appellant the State of Texas [1] challenges the
trial court's granting of the motion to dismiss the indictments
against appellees because a computer hard drive that was
seized by the police in the raid of the establishment was
damaged beyond repair while in the State's custody. [2] We
reverse and remand.

## I. Background

On February 18, 2009, officers from the Victoria Police
Department and United States Secret Service raided the
Victoria Internet Café (the Café) pursuant to a warrant issued
after a nine-month undercover investigation. According to
testimony by officers involved in the investigation, the Café
offered its customers access to illegal eight-liner gambling
devices. During the raid, law enforcement seized every
computer in the Café, including the customer terminals
and the point-of-sale terminal, referred to by the parties as
"POS1," that was used by Café employees to transact with
patrons. It is undisputed that the hard drive in POS1 was
damaged beyond repair while in the State's custody. The State
concedes that no usable information can be retrieved from that
hard drive. [3]

In January 2011, in connection with their involvement with
the Café, appellees were charged in identical indictments
for the offenses of organized criminal activity and money
laundering. Count 1 of the indictments alleged that appellees,
"with intent to establish, maintain, and participate in
a combination and in the profits of a combination, ...
commit[ted] the offense[s] of [Gambling Promotion, Keeping
a Gambling Place, Possession of a Gambling Device, and
Possession of Gambling Paraphernalia]." *See* TEX. PENAL
CODE ANN. § 71.02(a)(2) (West, Westlaw through 2015
R.S.). Count 2 alleged that appellees "knowingly acquire[d],
maintain[ed] an interest in, conceal[ed], possess[ed],
transfer[red] and transport[ed] ...[;] conduct[ed], supervise[d]

or facilitate[d] a transaction involving ...[;] and invest[ed], expend[ed] or receive[d] ... the proceeds of criminal activity." *See id.* § 34.02(a) (West, Westlaw through 2015 R.S.).

*2 In December 2013, appellees filed a motion to dismiss their indictments on the ground that the State's failure to preserve the data from POS1 deprived them of material, exculpatory evidence.[4] Appellees argued that this was a violation of both their due process rights under the United States Constitution and their due course of law rights under the Texas Constitution.[5] *See* U.S. CONST. amend. XIV; TEX. CONST. art. I, § 19. In support, appellees attached several exhibits, including: (1) orders from Cameron County and Hill County cases in which the courts dismissed charges based on devices like those seized from the Café and concluded that they were not illegal gambling devices; (2) manuals for the Hest Sweepstakes System, the program allegedly housed on POS1 that the Café ran on its terminals; (3) a letter from general counsel of the Texas Alcoholic and Beverage Commission expressing his opinion, in a different case, that the Hest Sweepstakes System was not an illegal gambling program; (4) the affidavit of Nick Farley, an electrical engineer who specializes "in the testing and evaluation of gaming and electronic devices," including a report by Farley about the workings of the Hest Sweepstakes System; and (5) the affidavit of Vanessa Pena, a Café employee.

In his affidavit, Farley stated that the Hest sweepstakes program's database stored all current and historical information related to every customer, transaction, and "sweepstakes reveal." Farley stated that the

> information that was maintained in the database would have been exculpatory in defending against [the State's] allegations if, for example, the [State's] contention is that there were no entries available without purchase but the Cafe did in fact provide entries without purchase upon request; or that the customers did not know the sweepstakes prizes were not determined by the game terminals if, in fact, customers redeemed the sweepstakes prizes at the point of sale register or redeemed the sweepstakes prize at the game terminals without playing the games.

Farley stated that "[i]t is commonly understood throughout the gaming industry, including regulators, that one of the reasons for maintaining a database of this nature is to guard against allegations such as the ones in this case as well as providing a mechanism by which regulatory or law enforcement agencies can monitor the establishment." Finally, in the report about the workings of the Hest system attached to Farley's affidavit, Farley concluded that the Hest sweepstakes program was not a "traditional gaming device" in that its "outcome is based upon a finite pool of sweepstakes entries" and "pre-determined" prizes.

Citing the various exhibits and Pena and Farley's affidavits, appellees contended that the lost evidence from POS1 would have shown that the sweepstakes program complied with Texas law and was not an illegal gambling device. *See* TEX. PENAL CODE ANN. § 47.01(4) (West, Westlaw through 2015 R.S.) (defining as a "gambling device" "any electronic, electromechanical, or mechanical contrivance ... that for a consideration affords the player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the contrivance"). Appellees contended that Café patrons were given entries to the sweepstakes after they bought long-distance phone cards. Appellees contended that patrons were able to reveal their sweepstakes prizes without playing the games, that patrons were not required to buy phone cards to participate in the sweepstakes, and that patrons bought phone cards without participating in the sweepstakes. In sum, appellees argued that the destroyed evidence would have shown that: the program was not an illegal game of chance because the prizes for the game were set and patrons merely "revealed" the prizes after playing the game; there was no consideration involved because patrons could play the game for free; and there was no illegal prize because Texas law allows for cash prizes in sweepstakes.

*3 The State responded that the lost evidence from the database was not material, exculpatory evidence under *Brady v. Maryland* but, instead, potentially useful evidence under a later line of cases starting with *Arizona v. Youngblood*. Under those cases, the State argued, appellees would be required to show that law enforcement acted in bad faith in failing to preserve the evidence.

After a hearing, the trial court granted appellees' motion to dismiss. In its dismissal order, the trial court made the following relevant findings of fact:

1. On or about February 18, 2009, the State of Texas raided the Victoria Internet Café located at 2604 N. Laurent, Victoria, Victoria County, Texas.

2. On or about February 18, 2009, the State of Texas seized and took control of the Victoria Internet Cafe computer system.

3. On or about February 18, 2009, at the time the Victoria Internet Cafe computer system was seized by the State of Texas, the Victoria Internet Cafe computer system was operational for [sic] the State of Texas charged those seated at computers with criminal offenses.

4. The Victoria Internet Cafe computer system has been under the care, custody and/or control of the State of Texas or its agents since its seizure on or about February 18, 2009.

5. One of the items seized by the State of Texas, or its agents, on February 18, 2009 was a Point of Sale computer commonly referred to as POS 1.

6. It is undisputed that on or about February 18, 2009, at the time of the raid of the Victoria Internet Cafe, the Victoria Internet Cafe computer system was operating software developed by Hest Technologies known as Flest Sweepstakes Management System.

7. The Victoria Internet Cafe was operating the Flest Get Connected Sweepstakes Management System as evidenced by the Get Connected cards seized by the State at the time of the raid on or about February 18, 2009....

8. Whether the Victoria Internet Cafe was operating the Flest Get Connected Sweepstakes Management System or the Flest Prepaid Planet Sweepstakes Management System is not an issue in the present matter as Nick Farley testified by way of affidavit that regardless of the system used "the manner and means in which the System generated and stored internal data, commonly referred to as the database, did not change."

9. The Flest Sweepstakes System database stored all current and historical information relating to each and every customer, all current and historical information relating to each and every sale and all current and historical information relating to each and every sweepstake reveal or play.

10. The Flest Sweepstakes System database ... and/ or internal programs using data contained within the database, would allow Defendants to review the entire history of each and every transaction related to each and every customer's individual account. This information included all items purchased, including phone cards, internet time and phone accessories, including the date and amount of each purchase. This information included any sweepstakes entries revealed regardless of the method in which the sweepstakes entries were revealed, such as at the POS, at a computer terminal without playing the games or at the computer terminal through entertaining games. If the customer revealed prizes via the entertaining games the database housed the historical information of the games played, the times each game was played, and the sweepstakes prizes revealed with each game. This database also maintained information as to each account number showing sweepstakes entries associated with each participant's account. This included prizes that had not been redeemed. All sweepstakes entries, whether obtained with a purchase or obtained through no purchase, are maintained by the database, which housed information as to whom entries were issued, the date they were issued and the sweepstakes prize, if any, awarded as a result of each free sweepstakes entry. This information was stored by individual customer account number, but could be accessed through various reports generated by software contained within the system.

*4 11. One of the reasons for maintaining a database of this nature is to guard against allegations of the nature charged in the present indictment.

12. At the time of the raid of the Victoria Internet Cafe on or about February 18, 2009, the State of Texas realized the importance of the information stored on the Victoria Internet Cafe computer system for the State of Texas had the United States Secret Service participate in the raid and the dismantling of the Victoria Internet Café computer system.

13. Defendants offered the testimony of Nick Farley and Vanessa Pena by affidavit. The State did not object to the testimony of either witness in this fashion.

14. Ms. Vanessa Pena testified by way of affidavit. Ms. Pena was employed for approximately one year at the Victoria Internet Cafe as a sales assistant and operated a Point of Sale Register. Ms. Pena [ ] testified

[that she regularly provided customers free sweepstakes entries; regularly redeemed entries for customers at the POS1 terminal; regularly observed customers redeeming entries using the "quick redeem" feature; and regularly sold phone cards to customers who did not redeem sweepstakes entries]....

15. Nick Farley testified by way of affidavit that this information would be stored within the database and that this information, in a case of this nature, was both material and exculpatory.

16. The Victoria Internet Cafe Hest System database contained evidence that was both material and exculpatory to the defendants in the matter.

17. The Court finds that the State failed to preserve material and exculpatory evidence.

18. The defendants bear no fault in the destruction of the exculpatory evidence.

....

20. This evidence goes directly to the elements of the charges contained in the present indictment.

The trial court then drew the following conclusions of law:

1. The state's failure to preserve material and exculpatory evidence is a Due Course of Law violation. Tex. Const. Art. I. Sec. 19;

2. The state's failure to preserve material and exculpatory evidence is a violation of the Defendant's right to Due Process. U.S. Const. Amendment XIV, § 1;

3. A motion to ... dismiss an indictment is proper when law enforcement fails to preserve evidence that is both material and exculpatory. *Mahaffey v. State*, 937 S.W.2d 51 (Tex.App.–Houston [1st Dist.] 1996, no pet.) ...[;]

4. A due course of law and a due process violation occurs whenever a state suppresses or fails to disclose material, exculpatory evidence, regardless of whether or not the state acted in bad faith. *Illinois v. Fisher*, 540 U.S. 544, 547–48 [124 S.Ct. 1200, 157 L.Ed.2d 1060] ... (2004);

5. Because material and exculpatory evidence was located on the computer and said evidence was lost by the State, proceeding to trial will result in a deprivation of the Defendant's constitutional right to Due Course of Law and Due Process of Law....

This appeal followed.

## II. Standard of Review

In reviewing the dismissal of an indictment, the appellate court must review the trial court's ruling under a bifurcated standard. The court of appeals must give almost total deference to a trial court's findings of facts that are supported by the record, as well as mixed questions of law and fact that rely upon the credibility of a witness. However, the court of appeals applies a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations.
**\*5** *State v. Krizan–Wilson*, 354 S.W.3d 808, 815 (Tex.Crim.App.2011) (citing *State v. Moff*, 154 S.W.3d 599, 601 (Tex.Crim.App.2004); *Guzman v. State*, 955 S.W.2d 85, 87–89 (Tex.Crim.App.1997)).

## III. Discussion

By one issue, the State argues that the trial court erroneously employed the legal standard from *Brady v. Maryland* to dismiss the indictments, reasoning that *Brady's* "material and exculpatory" standard cannot be applied before a trial on the merits. *See* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The State suggests that where evidence is lost before trial, it can only be considered "potentially useful" as "no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *See Arizona v. Youngblood*, 488 U.S. 51, 57–58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). Because the lost evidence in this case was merely "potentially useful" and appellees failed to make the requisite showing that the State and law enforcement acted in bad faith, the State argues that the trial court had no legal basis to dismiss the indictments. In response, appellees argue that "[t]here is no doubt that the Victoria Café Hest Sweepstakes System [i.e., POS1], at the time of seizure by the State [,] contained exculpatory and material information."

### A. Applicable Law
"A prosecutor has an affirmative duty to turn over material, favorable evidence to the defense. Additionally, the government is constitutionally required to preserve evidence that might be expected to play a significant role in the suspect's defense." *Little v. State*, 991

S.W.2d 864, 866 (Tex.Crim.App.1999). "So the Supreme Court's jurisprudence divides cases involving nondisclosure of evidence into two areas[.] [First], *Brady* addresses exculpatory evidence still in the government's possession." *Id.* (citing *Brady,* 373 U.S. at 87, 83 S.Ct. 1194). Under *Brady,* the suppressed or undisclosed evidence must be both exculpatory and material. 373 U.S. at 87, 83 S.Ct. 1194. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). In an earlier case, the Supreme Court noted that *Brady* and its material/exculpatory framework generally applies to "situations ... involv[ing] the discovery, after trial[,] of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). *Bagley's* definition of materiality is therefore consistent because "[u]sually, a determination concerning the materiality prong of *Brady* involves balancing the strength of the exculpatory evidence against the evidence supporting conviction." *Hampton v. State,* 86 S.W.3d 603, 613 (Tex.Crim.App.2002).

The second area of nondisclosure is governed by *Youngblood* and *California v. Trombetta,* cases where "the government no longer possesses the disputed evidence." *Little,* 991 S.W.2d at 866 (citing *Youngblood,* 488 U.S. at 57–58, 109 S.Ct. 333; *Trombetta,* 467 U.S. 479, 488–89, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)). In *Youngblood,* the Supreme Court reasoned and held as follows:

> **\*6** The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady,* makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. Part of the reason for the difference in treatment is found in the observation made by the Court in *Trombetta,* ... that "[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." [And] [p]art of it stems from our unwillingness to read the "fundamental fairness" requirement of the Due Process Clause ... as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material

that might be of conceivable evidentiary significance in a particular prosecution. We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, *i.e.,* those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.

488 U.S. at 57–58, 109 S.Ct. 333 (quoting *Trombetta,* 467 U.S. at 486, 104 S.Ct. 2528) (other citations omitted); *see Illinois v. Fisher,* 540 U.S. 544, 547, 124 S.Ct. 1200, 157 L.Ed.2d 1060 (2004) (citations omitted).

To summarize the forgoing authority, if the State fails to preserve evidence that is exculpatory and material, then a due process violation has occurred regardless of the good or bad faith on the part of the State in failing to preserve that evidence. *See Fisher,* 540 U.S. at 547, 124 S.Ct. 1200; *Youngblood,* 488 U.S. at 57–58, 109 S.Ct. 333; *see also Martinez v. State,* No. 13–06–665–CR, 2008 WL 2515876, at \*7 (Tex.App.–Corpus Christi Jan. 24, 2008) (mem. op., not designated for publication). However, if the State fails to preserve potentially useful evidence, the defendant must go a step further and demonstrate that the State failed to preserve that evidence in bad faith. *See Fisher,* 540 U.S. at 547, 124 S.Ct. 1200; *Youngblood,* 488 U.S. at 57–58, 109 S.Ct. 333; *see also Martinez,* 2008 WL 2515876, at \*7.

### B. Material and Exculpatory or Potentially Useful Information

Because the trial court in this case did not make a finding of bad faith, we must determine whether there exists a legal basis to conclude that the information on POS1 was material and exculpatory, rather than merely potentially useful. *See Krizan–Wilson,* 354 S.W.3d at 815. Appellees attempted to establish the content of the information on POS1 primarily through the affidavits of Farley and Pena, which the trial court discussed in its findings of fact.

#### 1. Appellees' Supporting Affidavits

Farley stated in general terms that POS1 would contain transaction history for each and every customer account, including the store items purchased and the manner in which

sweepstakes prizes were revealed—i.e., whether the prize was revealed at the POS1, at a computer terminal without playing the games, or at the computer terminal by playing the entertaining games. Although Farley identified the type of information that POS1 was capable of storing, he had no personal knowledge of its actual content. Thus, Farley could only say that POS1 potentially stored useful information, depending on what was inside. *See Youngblood,* 488 U.S. at 57, 109 S.Ct. 333 (holding that a semen sample found on the sexual assault victim's clothes—which had not been tested prior to its destruction—was only potentially useful in a sexual assault case because it might have exonerated the defendant, but there was no way to know the result of any testing).

Although Farley's affidavit was speculative, at best, concerning the actual information on POS1, appellees also introduced Pena's affidavit, which drew no objection from the State. In her affidavit, Pena, a former employee of the Café, stated that: (1) she regularly provided patrons free entries into the sweepstakes ("free entries"); (2) she regularly assisted patrons who redeemed sweepstakes without playing the entertaining games ("quick reveal"); and (3) she regularly assisted patrons who purchased phone cards but did not redeem their sweepstakes entries ("no-reveal"). Farley stated in his affidavit that these facts would have been documented on POS1.[6]

*7 Deferring to the trial court's fact findings, we must accept that the information on POS1 would have shown what Pena said it would have shown—i.e., evidence of some free entries, some quick reveals, and some no-reveals. *See Krizan–Wilson,* 354 S.W.3d at 815. Consequently, the question becomes whether this information is exculpatory and material in a prosecution for organized crime in which gambling offenses supply the underlying criminal activity.

**2. The State's Indictment**

As previously mentioned, the State's indictment alleged that appellees, "with intent to establish, maintain, and participate in a combination and in the profits of a combination, ... commit[ted] the offense[s] of [gambling promotion, keeping a gambling place, possession of a gambling device, and possession of gambling paraphernalia]." *See* Tex. Penal Code Ann. § 71.02(a)(2). Each gambling offense alleged in the indictment required the State to prove either that a gambling device or a lottery was involved.[7] *See* TEX. PENAL CODE ANN. § 47.03(a)(1), (5) (West, Westlaw through 2015 R.S.)

(promoting gambling); *Id.* § 47.04(a) (keeping a gambling place); *Id.* § 47.06(a) (possessing a gambling device); *Id.* § 47.06(c) (possession gambling paraphernalia). A "gambling device" is "any electronic, electromechanical, or mechanical contrivance ... that *for a consideration* affords the player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the contrivance." *Id.* § 47.01(4) (emphasis added). A "lottery" is "any scheme or procedure whereby one or more prizes are distributed by chance among persons who have paid or promised *consideration* for a chance to win anything of value...." *Id.* § 47.01(7) (emphasis added); *United States v. Davis,* 690 F.3d 330, 333 (5th Cir.2012) (citing *Brice v. State,* 156 Tex.Crim. 372, 242 S.W.2d 433, 434 (1951)). A gambling device and a lottery must contain the essential element of consideration.

*8 After reviewing the indictment, the trial court's findings, and the arguments of the parties, we find it evident that the dispute concerning the exculpatory value and materiality of the information on POS1 centers on a disagreement about the meaning of the consideration element as it relates to the legality of promotional sweepstakes under these Texas gambling statutes. In order to resolve this dispute, we must evaluate the extent to which the information on POS1 would have negated the element of consideration.

**3. The Challenged, Consideration Element**

Several courts have examined whether the element of consideration was present in sweepstakes schemes that were substantially similar to the one at issue here. We draw on these cases for guidance in resolving the ultimate issue. In *Jester v. State,* the Texarkana Court of Appeals considered the sufficiency of the evidence to convict an owner who offered a sweepstakes played on electronic devices at his store. 64 S.W.3d 553, 554 (Tex.App.–Texarkana 2001, no pet.). Similar to the sweepstakes scheme at issue here, the sweepstakes in *Jester* offered participants the opportunity to receive plays without any purchase necessary—i.e., free entries. *Id.* at 555. Participants also could receive entries through the purchase of a phone card, which gave the participants 100 credits to play the sweepstakes. *Id.* In analyzing whether consideration was present in the *Jester* sweepstakes, the court of appeals held that "the decision turn[ed] on whether the sweepstakes was intended to promote the sale of telephone cards or whether the telephone cards were there as an attempt to legitimize an illegal gambling device." *Id.* at 558. Applying this framework, the court

of appeals concluded that the sweepstakes satisfied the consideration element and determined that the sale of phone cards was an attempt to legitimize illegal gambling. *Id*. The following evidence drove its decision:

> telephone cards cost "much" more per minute than the market cost of telephone time; there was testimony that the telephone cards did not work; there was evidence that players did not value the telephone cards, and that some players did not know they even were telephone cards; there was testimony that the employees were aware that the customers did not value the telephone cards; there were no signs on the outside of the building advertising or indicating that telephone cards were sold at the store; and no employee tried to sell customers on the telephone cards.

*United States v. Davis*, 690 F.3d 330, 338 (5th Cir.2012) (summarizing the evidence driving the *Jester* Court's finding that the consideration element was satisfied).

In *Davis*, the Fifth Circuit, citing *Jester*, found the evidence sufficient to support the consideration element under a sweepstakes scheme similar to the one at issue here:

> There were three ways for sweepstakes participants to acquire entries. First, by purchasing Internet time at one of the cafés; each dollar of Internet time purchased came with 100 entries. Second, by requesting entries in person at the café, up to 100 entries a day. Or third, by requesting entries by mail, also up to 100 entries a day. After obtaining entries, participants could choose among three ways to find out if their entries were winners; the method chosen did not affect whether a particular entry was a winner or a loser because, as noted earlier, whether it was a winner or a loser was predetermined by the computer software. First, participants could ask the clerk who sold them Internet time to instantly reveal whether any of their entries were winners and if so, what their total winnings were. Second, participants could swipe at a computer terminal the card issued by the cafés that electronically stored Internet time and entries, and then choose "reveal" or "quick win" on the screen. That option would, like the instant reveal, immediately tell the participant whether or not the entries were winners, and if so, for how much.

*9 Third, participants could reveal whether their entries were winners by playing a variety of casino-like games available on each computer terminal.

*Davis*, 690 F.3d at 333. The Fifth Circuit applied *Jester's* purpose-and-function approach to determine whether the consideration element was satisfied and concluded: "the main purpose and function of [the café] was to induce people to play the sweepstakes, and ... the Internet time sold by the cafés ... was not the primary subject of the transaction, but instead mere subterfuge" to legitimize illegal gambling. *Id*. at 339–40. The *Davis* Court recited the following evidence as indicia that consideration fueled the sweepstakes:

> Customers' receipts indicating over 300,000 minutes of Internet time remaining were evidence that the customers did not value the Internet time they had purchased. Further evidence that customers did not value their Internet time was the investigating police officers' uniform testimony that during each of their visits to a café, all of the people there were only engaged in playing the sweepstakes—not accessing the Internet or using any of the other services provided. In addition to the customers' apparent disregard for the value of Internet time, there was evidence which casts doubt upon the defendants' claim that they intended to be legitimate, full-service Internet, faxing, copying, and word-processing vendors. For example, the manager of [the café] testified that Davis said that he was "not worried about" the roughly $400 every two months in revenue from services other than Internet time and simply told the manager to keep it. The defendants' focus on income from the sale of Internet time to the exclusion of income derived from other services offered by the café[ ] could reasonably raise the inference that the defendants offered the other services merely as an attempt to make it appear that their sale of Internet time was part of

a full-service business, instead of a mechanism for legitimizing unlawful activity. Further evidence that the defendants' true purpose for the café[ ] was to create a place where people would be comfortable staying for a long time, purchasing Internet time and playing the sweepstakes, was the casino-like atmosphere at the cafés, complete with tinted windows and free food and drink. Finally, it is reasonable to infer that [the defendants'] purpose for the cafés was to legitimize illegal gambling from the fact that café customers were required to sign a form stating that they were not gambling upon entering at least one of the café [ ]; legitimate businesses ordinarily do not require such formalities.

*Id.*

Most recently, in *Texas v. Ysleta del sur Pueblo*, the United States District Court for the Western District of Texas surveyed the case law on the issue of promotional sweepstakes and the element of consideration. No. EP–99–CV–320–KC, 2015 WL 1003879, at *30 (W.D.Tex. Mar. 6, 2015). The court, relying heavily on *Jester* and *Davis*, made the following observations: (1) "a sweepstakes will not necessarily constitute an illegal lottery when a means of entry is connected to the purchase of a legitimate product"; (2) "a promotional sweepstakes must also offer an alternative means of free entry"; (3) however, "[t]he mere pretense of free prizes, designed to evade the law, [will] not negate the element of consideration"; and (4) "the primary subject of the transaction must be the promoted product and not the sweepstakes game itself." *Id.* at *30 (citations and internal quotes omitted).

**\*10** We agree with these courts that the question of whether consideration is present in any promotional sweepstakes should turn on whether the product promoted was mere subterfuge to promote play in the sweepstakes or whether the sweepstakes promoted a legitimate product. Under this test, the availability of free entries is necessary, but not sufficient, to remove consideration from the sweepstakes.[8] Indeed, the *Davis* and *Jester* Courts found consideration even in the face of undisputed evidence that free entries were available. *Davis*, 690 F.3d at 339–40; *Jester*, 64 S.W.3d at 558. Thus, the

existence of free entries alone does not negate consideration, but must be taken in conjunction with all of the facts and evidence.

Deferring to the trial court's fact findings, the most that can be said about POS1 is—as per Pena's affidavit—that it stored evidence that some sweepstakes entries were free, some customers did not use the entertaining games to redeem sweepstakes entries, and some customers bought store products without redeeming their sweepstakes entries. In view of the standard by which the consideration element is to be assessed by the jury, we cannot conclude that this evidence would be exculpatory and material, rather than merely potentially useful. *See Davis*, 690 F.3d at 339–40; *Ysleta del sur Pueblo*, 2015 WL 1003879, at *30; *Jester*, 64 S.W.3d at 558; *see also Fisher*, 540 U.S. at 547, 124 S.Ct. 1200; *Youngblood*, 488 U.S. at 57–58, 109 S.Ct. 333.

### 4. Reasonable Availability of Comparable Evidence

Furthermore, in order to meet the materiality prong of the due process test, the information on POS1 had to be "of such a nature that the [appellees] would be unable to obtain comparable evidence by other reasonably available means." *See Trombetta*, 467 U.S. at 489, 104 S.Ct. 2528 (articulating the standard for constitutional materiality in a lost-evidence case).[9] In this regard, the State furnished appellees with 115,000 pages of discovery, which, according to the State, included the names and addresses of witnesses who could say whether or not they were given free plays, explanations of how the instant reveal works, and whether or not they revealed all of their sweepstakes entries. In addition, appellees did not dispute that there was audio of the games being explained by the employees to the officers and pages of sign in sheets for the sweepstakes and for internet time. The State also provided an accounting for each week of the indicted period that shows the amount of phone time sold, free entries given, other promotions given, internet time sold, and amount of entries redeemed, among other information.

Appellees acknowledge that this evidence was made available to them but assert that it "completely fail[s] to provide the [information on POS1]." In support of this assertion, appellees argue that the documents "do not provide the necessary detail needed as the records that were available on POS1 [.]" However, appellees fail to explain how the documents lack sufficient detail or are incomparable to the information on POS1. Additionally, appellees assert that the documents are not an adequate substitute because they would

not show that participants who obtained entries through the purchase of phone cards had an equal chance of winning as participants who obtained entries for free. While equality of chance has been recognized as a factor that is relevant to the consideration element, we note that Pena's affidavit concerning the activity she observed at the café contains no information on the matter. Furthermore, Farley remains available to testify—consistent with his affidavit—that the chance of winning was the same, whether by way of free entry or by purchase of a product. Finally, according to appellees, the documents were further inadequate because they did not "provide the necessary detail to prove how the software functioned or that appellees were operating a legal sweepstakes." However, again, that information is readily available through Farley, and no showing has been made that the type of information on POS1 would include anything more than customers' transaction history.

## 5. Summary

**\*11** It was not shown in the trial court that the information on POS1 was exculpatory and material, rather than merely potentially useful. Furthermore, as to materiality, we are not persuaded that appellees lack reasonable access to comparable evidence. Accordingly, we sustain the State's issue. *See id.*

## IV. Conclusion

Having concluded that there was no legal basis for the trial court to grant appellees' motion to dismiss, we reverse its order and remand the cases for further proceedings.

## All Citations

--- S.W.3d ----, 2015 WL 4504936

## Footnotes

1    In this case, the State is represented by prosecutors from the Office of the Attorney General.

2    Although brought under separate appellate cause numbers, the State's arguments against each appellant are identical. Moreover, appellees filed a single motion to dismiss, and the trial court granted it as to each appellee in one order. As such, we consolidate the appeals and address the State's issue in this single opinion.

3    In several proceedings after the indictments against appellees were eventually filed in 2011, the State represented to the trial court that its technical experts were attempting to retrieve data from the damaged hard drive, but eventually conceded that no usable data could be salvaged.

4    Appellees also filed a motion to quash on both the lost evidence ground and on the ground that the indictments failed to sufficiently specify the facts. The trial court ultimately determined that a motion to quash was not the proper vehicle for appellees' complaints. The motion to quash is not before us in this appeal.

5    The Due Course of Law Clause provides no greater protection than the Due Process Clause regarding the State's loss or destruction of evidence in a criminal prosecution. *See State v. Vasquez,* 230 S.W.3d 744, 750–51 (Tex.App.–Houston [14th Dist.] 2007, no pet.); *McGee v. State,* 210 S.W.3d 702, 705 (Tex.App.–Eastland 2006, no pet.); *Salazar v. State,* 185 S.W.3d 90, 92 (Tex.App.–San Antonio 2005, no pet.); *Jackson v. State,* 50 S.W.3d 579, 588–89 (Tex.App.–Fort Worth 2001, pet. ref'd); *Mahaffey v. State,* 937 S.W.2d 51, 53 (Tex.App.–Houston [1st Dist.] 1996, no pet.); *State v. Rudd,* 871 S.W.2d 530, 532–33 (Tex.App.–Dallas 1994, no pet.); *Saldana v. State,* 783 S.W.2d 22, 23 (Tex.App.–Austin 1990, no pet.).

6    Farley then hypothesized that the information on POS1 would be exculpatory if the State's "contention[s] [were] that there were no [free entries available] ... or that the customers did not know the sweepstakes prizes were not determined by the game terminals." It is worthy of note that the State never contended that no free entries were available. Instead, the State conceded the fact of free entries, but argued that the consideration element was not negated by that fact alone.

7    A person is guilty of "gambling promotion" if the State proves that he intentionally or knowingly "operates or participates in the earnings of a gambling place" or "for gain, sets up or promotes any *lottery* or sells or offers to sell or knowingly possesses for transfer, or transfers any card, stub, ticket, check, or other device designed to serve as evidence of participation in any *lottery*." *See* Tex. Penal Code Ann. § 47.03(a)(1), (5) (West, Westlaw through 2015 R.S.) (emphasis added). A person is guilty of "keeping a gambling place" if the State proves that he "uses or permits another to use as a gambling place any real estate, building, room, tent, vehicle, boat, or other property whatsoever owned by him or under his control, or rents or lets any such property with a view or expectation that it be so used." *Id.* § 47.04(a). A "gambling place" is "any real estate, building, room, tent, vehicle, boat, or other property whatsoever, one of the uses of

which is ... the conducting of a *lottery* or the playing of *gambling devices.*" *Id.* § 47.01(3) (emphasis added). A person is guilty of "possession of a gambling device" if, "with the intent to further gambling, he knowingly owns, manufactures, transfers, or possesses any *gambling device* that he knows is designed for gambling purposes or any equipment that he knows is designed as a subassembly or essential part of a *gambling device.*" *Id.* § 47.06(a) (emphasis added). A person is guilty of "possession of gambling paraphernalia" if, "with the intent to further gambling, the person knowingly owns, manufactures, transfers commercially, or possesses gambling paraphernalia." *Id.* § 47.06(c). "Gambling paraphernalia" means any record, ticket, certificate, bill, slip, token, writing, scratch sheet, or other means of carrying on a lottery. *Id.* § 47.01(6).

8    We observe that the information on POS1 might have been exculpatory and material had appellees presented evidence that the *only* means of entry into the sweepstakes was by way of free entry. However, Pena could only say that free entries were "regularly" provided. There is no dispute that an alternative means of entry into the sweepstakes was through purchase of a store product.

9    In this case, the trial court made no determination that comparable information to that found on POS1 was unavailable to appellees.

---

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX B

TRIAL COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

GRANTING APPELLEES'S MOTION TO DISMISS

FILED APRIL 23, 2014

FILED

14 APR 23 PM 2:38

*Cathy Stuart*
DISTRICT CLERK
VICTORIA COUNTY, TEXAS

CAUSE NUMBER 11-1-25664-D

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | VICTORIA COUNTY, TEXAS |
| | § | |
| CHRISTOPHER SHAWN FELLOWS | § | 377TH JUDICIAL DISTRICT |


CAUSE NUMBER 11-1-25662-D

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | VICTORIA COUNTY, TEXAS |
| | § | |
| STEVE MARSTON | § | 377TH JUDICIAL DISTRICT |


CAUSE NUMBER 11-1-25661-D

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | VICTORIA COUNTY, TEXAS |
| | § | |
| PAUL CARTER | § | 377TH JUDICIAL DISTRICT |


## GRANTING
## ORDER ~~ON~~ MOTION TO DISMISS
ALL

On the 3rd day of January, 2014 came on to be heard Defendants' Motion to Dismiss and having considered the evidence offered and admitted is of the opinion that said Motion should be in all things GRANTED. The Court further enters the following findings of fact and conclusions of law:

1

RCC 177
330

## Findings of Fact

1. On or about February 18, 2009, the State of Texas raided the Victoria Internet Café located at 2604 N. Laurent, Victoria, Victoria County, Texas.

2. On or about February 18, 2009, the State of Texas seized and took control of the Victoria Internet Café computer system.

3. On or about February 18, 2009, at the time the Victoria Internet Café computer system was seized by the State of Texas, the Victoria Internet Café computer system was operational for the State of Texas charged those seated at computers with criminal offenses.

4. The Victoria Internet Café computer system has been under the care, custody and/or control of the State of Texas or its agents since its seizure on or about February 18, 2009.

5. One of the items seized by the State of Texas, or its agents, on February 18, 2009 was a Point of Sale computer commonly referred to as POS 1.

6. It is undisputed that on or about February 18, 2009, at the time of the raid of the Victoria Internet Café, the Victoria Internet Café computer system was operating software developed by Hest Technologies known as Hest Sweepstakes Management System.

7. The Victoria Internet Café was operating the Hest Get Connected Sweepstakes Management System as evidenced by the Get Connected cards seized by the State at the time of the raid on or about February 18. 2009. (Defendants' Exhibit 3)

8. Whether the Victoria Internet Café was operating the Hest Get Connected Sweepstakes Management System or the Hest Prepaid Planet Sweepstakes

2

RCC 2 of 7 331

Management System is not an issue in the present matter as Nick Farley testified by way of affidavit that regardless of the system used "the manner and means in which the System generated and stored internal data, commonly referred to as the database, did not change."

9. The Hest Sweepstakes System database stored all current and historical information relating to each and every customer, all current and historical information relating to each and every sale and all current and historical information relating to each and every sweepstake reveal or play.

10. The Hest Sweepstakes System database (the database and/or internal programs using data contained within the database, would allow Defendants to review the entire history of each and every transaction related to each and every customer's individual account. This information included all items purchased, including phone cards, internet time and phone accessories, including the date and amount of each purchase. This information included any sweepstakes entries revealed regardless of the method in which the sweepstakes entries were revealed, such as at the POS, at a computer terminal without playing the games or at the computer terminal through entertaining games. If the customer revealed prizes via the entertaining games the database housed the historical information of the games played, the times each game was played, and the sweepstakes prizes revealed with each game. This database also maintained information as to each account number showing sweepstakes entries associated with each participant's account. This included prizes that had not been redeemed. All sweepstakes entries, whether obtained with a purchase or obtained through no purchase, are maintained by the database, which housed information as to whom

3

ACC 7 4/362

entries were issued, the date they were issued and the sweepstakes prize, if any, awarded as a result of each free sweepstakes entry. This information was stored by individual customer account number, but could be accessed through various reports generated by software contained within the system.

11. One of the reasons for maintaining a database of this nature is to guard against allegations of the nature charged in the present indictment.

12. At the time of the raid of the Victoria Internet Café on or about February 18, 2009, the State of Texas realized the importance of the information stored on the Victoria Internet Café computer system for the State of Texas had the United States Secret Service participate in the raid and the dismantling of the Victoria Internet Café computer system.

13. Defendants offered the testimony of Nick Farley and Vanessa Pena by affidavit. The State did not object to the testimony of either witness in this fashion.

14. Ms. Vanessa Pena testified by way of affidavit. Ms. Pena was employed for approximately one year at the Victoria Internet Café as a sales assistant and operated a Point of Sale Register. Ms. Pena further testified:

   a. During my time as a sales assistant operating a Point of Sale register I regularly provided customers with free sweepstakes entries.

   b. During my time as a sales assistant operating a Point of Sale register I regularly redeemed sweepstakes entries at the Point of Sale register.

   c. During my time as a sales assistant operating a Point of Sale register I regularly observed customers and/or assisted customers in redeeming sweepstakes entries by use of the quick redeem at the customer terminals.

4

RCC 4 /⁄33

d. During my time as a sales assistant operating a Point of Sale register I regularly assisted customers who purchased prepaid phone cards who did not redeem their sweepstakes entries.

e. During my time as a sales assistant operating a Point of Sale register I regularly assisted customers who purchased prepaid phone cards and turned to walk out the door without redeeming any related sweepstakes entries. I informed them of their sweepstakes entries and redeemed those entries at my Point of Sale register.

15. Nick Farley testified by way of affidavit that this information would be stored within the database and that this information, in a case of this nature, was both material and exculpatory.

16. The Victoria Internet Café Hest System database contained evidence that was both material and exculpatory to the defendants in the matter.

THE COURT FINDS

17. ~~Find~~ that the State failed to preserve the material and exculpatory evidence.

ALL

18. The defendants bear no fault in the destruction of the exculpatory evidence.

19. The States production of Exhibit 1 which contains daily logs and sign-in-sheets does not mitigate the destruction of the database. For example:

a. The State failed to preserve and/or recover the data that would have proven that the games played did not dictate the result or the sweepstake's prizes did not change;

b. The State failed to preserve and/or recover the data that would have shown the numerous times free entries were provided;

c. The State failed to preserve and/or recover the data that would have shown the numerous times that customers redeemed entries at the POS;

d. The State failed to preserve and/or recover the data that would have shown the numerous times customers purchased phone cards without playing the computer terminals:

5

RCC 3387

e. The State failed to preserve and/or recover the data that would have shown the numerous times customers purchased phone time and never redeemed their entries;

f. The State failed to preserve and/or recover the data that would have shown that customers redeemed sweepstakes at the computer terminals without playing the games;

g. The State failed to preserve and/or recover the data that would have provided the defendants the ability to trace the results of free spins and any further reveals as a result of free spins; and

h. The State failed to preserve and/or recover the data that would have shown the dollar amount of sales of products other than prepaid phone time.

20. This evidence goes directly to the elements of the charges contained in the present indictment.

## Conclusions of Law

1. The state's failure to preserve material and exculpatory evidence is a Due Course of Law violation. Tex. Const. Art. 1. Sec. 19;

2. The state's failure to preserve material and exculpatory evidence is a violaton of the Defendant's right to Due Process. U.S. Const. Amendment XIV, § 1;

3. A motion to ~~quash or~~ *dee* dismiss an indictment is proper when law enforcement fails to preserve evidence that is both material and exculpatory. *Mahaffey v. State*. 937 S.W.2d 51 (Tex.App.—Houston [1st Dist.] 1996, no pet.)[*NOTE - EASE ALSO STATES MAHAFEY MOTION TO QUASH WHICH THIS TRIAL COURT DISAGREES*].

4. A due course of law and a due process violation occurs whenever a state suppresses or fails to disclose material, exculpatory evidence, regardless of whether or not the state acted in bad faith. *Illinois v. Fisher*. 540 U S. 544, 547–48. 124 S.Ct. 1200. 1202, 157 L.Ed.2d 1060 (2004);

6

RCC 837 7

5. Because material and exculpatory evidence was located on the computer and said evidence was lost by the State, proceeding to trial will result in a deprivation of the Defendant's constitutional right to Due Course of Law and Due Process of Law;

It is hereby ORDERED, ADJUDGED and DECREED that Defendants' Motion to Dismiss is GRANTED. *IT IS ORDERED THAT THE ABOVE CAPTIONED CASES BE AND ARE HEREBY DISMISSED BASED ON THE ABOVE FINDINGS.*

SIGNED, ORDERED AND ENTERED this *23rd* day of *April*, 2014.

_____
JUDGE PRESIDING

7

RCC3867